ERICH P. SCHORK (*pro hac vice*)
e.schork@barnowlaw.com
BARNOW AND ASSOCIATES, P.C.
1 North LaSalle Street, Suite 4600
Chicago, IL  60602
Tel: (312) 621-2000
Fax: (312) 641-5504

DAVID C. PARISI (SBN 162248)
dcparisi@parisihavens.com
PARISI & HAVENS LLP
212 Marine Street, Suite 100
Santa Monica, CA 90405
Tel: (818) 990-1299
Fax: (818) 501-7852

Plaintiffs' Interim Co-Lead Counsel

[Additional Counsel Listed on Signature Pages]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE QUAKER OATS MAPLE & BROWN SUGAR INSTANT OATMEAL LITIGATION | CASE NO. 2:16-CV-01442-PSG-MRW<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>USDJ:   Hon. Philip S. Gutierrez<br>Date:   March 19, 2018<br>Time:   1:30 p.m.<br>Ctrm:   6A<br><br>JURY TRIAL DEMANDED |

Case No. 16-CV-1442-PSG-MRW

# **TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................. 1

II.  STATEMENT OF FACTS .............................................................. 2

III. ARGUMENT ................................................................................... 3

    A.   Legal Standard ...................................................................... 3

    B.   Plaintiffs' Claims Are Not Preempted ................................. 4

        1.   Under the FDA Definitions, Maple Syrup and Brown Sugar Are Sweeteners ..................................... 5

        2.   The FDA Regulations That Quaker Oats Relies on are Inapplicable to Plaintiffs' Sweetener Claims ......................... 7

        3.   Quaker Oats' Label Violates the FDCA Requirement Applicable to Sweeteners ........................ 8

        4.   Plaintiffs Do Not Seek A Preempted Result........................... 9

    C.   The FAC Adequately Pleads That The Labels Are Deceptive ........ 10

        1.   The Labels Are Likely to Mislead a Reasonable Consumer into Believing the Products Contain Maple Syrup When They Do Not ..................................... 11

        2.   Plaintiffs' Unjust Enrichment Claims Are Adequately Pled ............................................. 18

IV.  CONCLUSION ............................................................................. 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. The Hain Celestial Grp., Inc.*,
    87 F. Supp. 3d 1226, 1237 ................................................................. 16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................... 4

*Aspinall v. Philip Morris Co., Inc.*,
    813 N.E.2d 476 (Mass. 2004) .......................................................... 10

*Bruesewitz v. Wyeth LLC*,
    562 U.S. 223 (2011) ...................................................................... 5, 7

*Daro v. Superior Court*,
    151 Cal.App.4th 1079 (2007) .......................................................... 10

*Dvora v. General Mills, Inc.*,
    2011 WL 1897349 (C.D. Cal. May 16, 2011) ................................. 18

*Engurasoff v. Coca-Cola Co.*,
    No. C 13-03990 JSW, 2014 WL 4145409 (N.D. Cal. Aug. 21, 2014) ............ 8

*ESG Capital Partners, LP v. Stratos*,
    828 F.3d 1023 (9th Cir. 2016) ......................................................... 18

*Gallagher v. Bayer AG*,
    2015 WL 1056480 (N.D. Cal. Mar. 10, 2015) .................................. 9

*Gitson v. Trader Joe's Co.*,
    No. 13-1333, 2013 WL 5513711 (N.D. Cal. Oct. 4, 2013) .............. 10

*Goldman v. Bayer AG*,
    No. 17-CV-0647-PJH, 2017 WL 3168525 (N.D. Cal. July 26, 2017) ........... 18

*Henderson v. Gruma Corp.*,
    2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ................................. 12

*Holk v. Snapple Beverage Corp.*,
    575 F.3d 329 (3d Cir. 2009) ............................................................. 7

*Iolab Corp. v. Seaboard Sur. Co.*,
   15 F.3d 1500 (9th Cir. 1994) ..........................................................................4

*Ivie v. Kraft Foods Glob., Inc.*,
   No. C-12-02554-RMW, 2013 WL 685372 (N.D. Cal. Feb. 25, 2013) ............8

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011) ..................................................................................11

*Lavie v. Procter & Gamble Co.*,
   105 Cal.App.4th 496 (2003) ....................................................................11, 14

*Martin v. Tradewinds Beverage Co.*,
   No. CV 16-9249 .............................................................................................9

*McKinnis v. General Mills, Inc.*,
   2007 WL 4762172 (C.D. Cal. Sept. 18, 2007) ..............................................18

*McKinnis v.Kellogg USA*,
   2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ..............................................18

*McKinnis v. Sunny Delight Beverages Co.*,
   2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) ................................................18

*Perez v. Kroger C*o.,
   No. 2:17-cv-02448-ODW, 2017 WL 3601998 (C.D. Cal. Aug. 18,
   2017) .............................................................................................................10

*Reid v. Johnson & Johnson*,
   780 F.3d 952 (9th Cir. 2015) ........................................................................10

*Saidian v. Krispy Kreme Doughnut Corp.*,
   No. 2:16-cv-08338-SVW(AFMx), 2017 WL 945083 (C.D. Cal. Feb.
   27, 2017) ..................................................................................................12, 18

*Stengel v. Medtronic Inc.*,
   704 F.3d 1224 (9th Cir. 2013) ........................................................................4

*Stiles v. Trader Joe's*,
   2017 WL 3084267 (C.D. Cal. Apr. 4, 2017) ............................................17, 18

*Suchanek v. Sturm Foods, Inc.*,
   764 F.3d 750 (7th Cir. 2014) ........................................................................10

*Trazo v. Nestle USA, Inc*.,
   2013 WL 4083218 (N.D. Cal. Aug. 9, 2013) ................................................. 4, 6

*Viggiano v. Hansen Nat. Corp*.,
   944 F. Supp. 2d 877 (C.D. Cal. 2013) ......................................................... 5, 7

*Williams v. Gerber Products C*o.,
   552 F.3d 934 (9th Cir. 2008) .................................................................. *passim*

*Wyler Summit P'ship v. Turner Broad. Sys., Inc*.,
   135 F.3d 658 (9th Cir. 1998) ............................................................................ 4

*Zupnick v. Tropicana Prods., Inc*.,
   No. CV 09-6130 DSF, 2010 WL 6090604 (C.D. Cal. Feb. 1, 2010) ............. 10

**Statutes**

6 V.S.A. §§ 492, 493 ........................................................................................ 13

21 U.S.C. § 343(i)(2) .......................................................................................... 8

21 U.S.C. § 343-1, sections (a)(1), (a)(2) and (a)(3) ......................................... 1

Federal Food, Drug and Cosmetic Act (FDCA), 21 U.S.C. §§ 301, *et
   seq*. ............................................................................................... 1, 8, 9, 10

M.G.L. c. 128, § 36C ........................................................................................ 13

Massachusetts Maple Law ................................................................................ 13

N.H. Rev. Stat. §§ 429:16, 429:17 .................................................................... 13

**Other Authorities**

21 C.F.R. § 101.4 (a)(1) and (b)(1) ..................................................................... 8

21 C.F.R. § 101.22 (a)(7) ..................................................................................... 8

21 C.F.R. § 102.5 .................................................................................................. 9

21 C.F.R. § 102.5(c) ............................................................................................. 9

21 C.F.R. § 131.111 (e)(2) ................................................................................... 5

21 C.F.R. § 131.170 (d) ........................................................................................ 5

21 C.F.R. § 131.200(d)(2) .................................................................................... 5

1

21 C.F.R. § 155.194 (2)(ii) ............................................................................5

2

21 C.F.R. § 168, Subpart B ...........................................................................5

3

21 C.F.R. § 168.140 .......................................................................................5

4

21 C.F.R. § 168.180 (b)(1) ...........................................................................5

5

6

21 C.F.R. § 170.3(o) ......................................................................................5

7

21 C.F.R. § 172.800 .......................................................................................5

8

21 C.F.R. § 172.831 .......................................................................................5

9

Fed. R. Civ. P. 8(a)(2) ...................................................................................3

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS

## I.      INTRODUCTION

Maple syrup and maple sugar (made by evaporating maple sap) are premium, traditional American sweetening ingredients, which garner special treatment under the law.  In fact, maple syrup is the only food that Congress expressly exempted from preemption from the Federal Food, Drug and Cosmetic Act (FDCA), 21 U.S.C. §§ 301, *et seq*. and implementing regulations, preserving state authority to regulate food mislabeling as it relates to maple. *See* 21 U.S.C. § 343-1, sections (a)(1), (a)(2) and (a)(3).

Defendant Quaker Oats Company ("Quaker Oats") labeled, packaged, and named its Maple & Brown Sugar Instant Oatmeal line of products to convey to consumers that the Products were made with maple syrup.[1] On the front of the Products' packaging, a glass pitcher of maple syrup appears prominently next to "Maple & Brown Sugar" in white, large, prominent font placed on top of a brown background.  "Maple & Brown Sugar" also appears in white, large, prominent font on top of a brown background on the top, side, and bottom of the Products' packaging. Contrary to Quaker Oats' representations made through imagery and the Products' name, the Products contained no maple syrup.

Quaker Oats' motion to dismiss lacks merit.  The assertion that its purported compliance with the FDA's flavoring regulations preempts Plaintiffs claims' is wrong. The FDA regulations are clear that maple syrup, maple sugar, and brown sugar are sweeteners.  Flavoring regulations are not applicable to sweeteners.  Therefore, Plaintiffs' claims are not preempted.

---

[1]      The Products include Quaker Oats products sold under the names: Maple & Brown Sugar Instant Oatmeal (Classic Recipe), Maple & Brown Sugar High Fiber Instant Oatmeal, Maple & Brown Sugar Gluten Free Instant Oatmeal, Maple & Brown Sugar Lower Sugar Instant Oatmeal, Maple & Brown Sugar Weight Control Instant Oatmeal, and Maple & Brown Sugar Organic Instant Oatmeal. FAC ¶ 1 n.1.

Further, Quaker Oats' arguments that no reasonable consumer would be misled by a label that states "naturally and artificially flavored" was squarely rejected by the Ninth Circuit in *Williams v. Gerber Products C*o., 552 F.3d 934, 938 (9th Cir. 2008).  In *Williams*, the label featured a vignette of fruit and with "naturally flavored" directly below "Fruit Juice Snacks." *Id*. at 941.  Despite the "naturally flavored" language, the Ninth Circuit found that a reasonable consumer could plausibly be deceived by the labeling, which potentially suggested (falsely) that those fruits and their juices were contained in the product. *Id*. at 939.

For these and the reasons stated below, the Court should deny the motion to dismiss in its entirety.

## II.      STATEMENT OF FACTS

This consumer class action arises out of Quaker Oats' misbranding and false advertising of its line of products sold as Quaker Oats Maple & Brown Sugar Instant Oatmeal. First Amended Complaint ("FAC") ¶¶1,2.  Maple syrup is a nutritive sweetener. FAC ¶ 22. Maple syrup is a natural sweetener that is healthier and more nutritious than cane sugar. FAC ¶ 20. Maple syrup contains important minerals, including manganese, zinc, calcium, potassium, iron, and magnesium, and has also been found to contain up to 20 antioxidants that positively affect human health, including anti-cancer and anti-inflammatory agents. *Id*. Because of these beneficial compounds, maple syrup has even been labeled by some publications as a superfood, similar to blueberries and broccoli. *Id*.

Quaker Oats labeled, packaged, and named the Products to convey to consumers that the Products are sweetened with maple syrup. FAC ¶ 24.  Food products represented as sweetened with maple syrup command a premium in the marketplace. FAC ¶ 25. With respect to the packaging, a pitcher of maple syrup appears on the front of the packaging next to the words "Maple & Brown Sugar" in white, large, prominent font placed on top of a brown background. FAC ¶ 23.

The words "Maple & Brown Sugar" also appears in white, large, prominent font on top of a brown background on the top, side, and bottom of the Products' packaging. Dkt. No. 54-3, Meltzer Decl., Ex. 2.

After seeing and believing Quaker Oats' representations that the Products were made with maple syrup, Plaintiffs collectively purchased the Products from retail stores in California, Illinois, New Jersey, and Massachusetts. FAC ¶¶ 8–13. Contrary to Quaker Oats' representations, the Products do not contain maple syrup and are not sweetened with maple syrup. FAC ¶ 26. As a result, Plaintiffs did not receive that which was promised and represented in purchasing the Products—a product made with a premium sweetening ingredient, maple syrup. Because of Quaker Oats' deceptive product labeling, Plaintiffs received a product made with different ingredients and which was less valuable than as represented when purchasing the Products. FAC ¶¶ 8–13.

Quaker Oats also relies heavily on the phrase "Naturally & Artificially Flavored" to justify the absence of maple syrup (and brown sugar) in the Products. The phrase appeared in small, hardly noticeable letters—such as, brown letters on a brown background—and Quaker Oats' reliance on the phrase rests on the false premise that the Products could not have contained maple syrup and natural and artificial flavors—of course, they could have.  In fact, Plaintiffs alleged that the instant oatmeal products of Defendant's competitors, who make materially the same claims as Defendant does here, actually contain maple sugar and brown sugar as sweetening ingredients in addition to natural and artificial flavors.  FAC ¶24.

## III.      ARGUMENT

### A.    Legal Standard

The Federal Rules of Civil Procedure require that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When reviewing a motion to dismiss, all factual allegations are taken as true and construed in the light most favorable to the non-moving party. *See Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1504 (9th Cir. 1994). Moreover, a Court will dismiss only those claims for which it appears beyond doubt that plaintiff can prove no set of facts which would entitle him to relief. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).

## B.   Plaintiffs' Claims Are Not Preempted

"There is a presumption against federal preemption of state laws that operate in traditional state domains." *Stengel v. Medtronic Inc*., 704 F.3d 1224, 1227–1228 (9th Cir. 2013). "Parties seeking to invalidate a state law based on preemption bear the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law." *Id*. at 1227-1228 (*citing De Buono v. NYSA–ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997) (citations and quotations omitted).

Quaker Oats argues that Plaintiffs' claims are preempted because the Products' label complies with the federal flavoring regulations.  Dkt. 54 at 6. However, for the reasons stated below, Quaker Oats cannot meet its burden of showing that the flavoring regulation applies to the Products.  *See Trazo v. Nestle USA, Inc*., 2013 WL 4083218, at *6 (N.D. Cal. Aug. 9, 2013) ("[P]reemption is an affirmative defense, not an element of [p]laintiff['s] claims . . . [defendant] bears

the burden of establishing that preemption applies."); *see also Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 251 n.2 (2011).

### 1. Under the FDA Definitions, Maple Syrup and Brown Sugar Are Sweeteners

Under the FDA regulations, maple syrup is a sweetener and not a flavoring. *See* 21 C.F.R. § 168.140 (standard of identity for maple syrup appears in 21 C.F.R. § 168, Subpart B - Requirements for Specific Standardized Sweeteners and Table Sirups); *see also*, 21 C.F.R. § 168.180 (b)(1) (identifying maple syrup as an optional nutritive carbohydrate sweetener in table syrup); 21 C.F.R. § 131.170 (d) (identifying maple sugar and sweeteners listed in part 168 of subchapter B as nutritive carbohydrate sweeteners in eggnog); 21 C.F.R. § 131.111 (e)(2) (same for acidified milk); 21 C.F.R. § 155.194 (2)(ii) (same for ketchup).

The FDA considers the following to be sweeteners:

> Sugar (sucrose), beet or cane; invert sugar (in paste or sirup form); **brown sugar**; refiner's sirup; molasses (other than blackstrap); high fructose corn sirup; fructose; fructose sirup; maltose; maltose sirup, dried maltose sirup; malt extract, dried malt extract; malt sirup, dried malt sirup; honey; **maple sugar; or any of the sweeteners listed in part 168 of this chapter**, except table sirup."

21 C.F.R. § 131.200(d)(2) (listing optional sweeteners in yogurt) (emphasis added). Like brown sugar, the FDA considers maple syrup and maple sugar to be nutritive sweeteners.

Courts look to the FDA regulations to determine whether a food substance is a sweetener or a flavor. *See e.g., Viggiano v. Hansen Nat. Corp*., 944 F. Supp. 2d 877, 889 (C.D. Cal. 2013) ("Under FDA regulations, sucralose may be used as a sweetener in foods generally. 21 C.F.R. § 172.831. Similarly, ace-k may be safely used as a general-purpose sweetener and flavor enhancer in foods generally. 21 C.F.R. § 172.800 . . . . . Accordingly, neither sucralose nor ace-k is a flavor.") (internal citations omitted). Furthermore, the distinction between the FDA terms "flavoring" and "nutritive sweetener" is evident in 21 C.F.R. § 170.3(o), where the FDA lists terms that "describe the physical or technical functional effects for

which direct human food ingredients may be added to foods." Section 170.3(o)(12) defines "flavoring agents," while § 170.3(o)(21) defines "nutritive sweeteners." These terms are entirely separate technical terms.

Contrary to Defendant's contention that "it is obvious from the Products' labeling that the Maple & Brown Sugar label is a *flavor* label" (Defs. Br. 8 at 7-8) (emphasis added), Plaintiffs clearly allege that the labeling conveys, through a vignette of maple syrup, that maple syrup is a sweetener in the oatmeal. FAC ¶¶ 2, 23-24.  Merely adding the phrase "Naturally and Artificially Flavored," does not change the reality that, by definition, maple syrup and brown sugar are sweeteners, not flavors. Although Defendant correctly note that an FDA consumer update cautions consumers that a vignette of a maple *leaf* depicted on a label does not mean that the product will contain maple syrup, here such cautioning is not warranted because the label features a vignette of *maple syrup*. Maple leaves are not ordinarily found as ingredients in oatmeal; therefore, they can convey maple flavor.  By contrast, the FAC alleges that maple syrup and brown sugar are commonly found as sweeteners in instant oatmeal products sold by Defendant's competitors notwithstanding the representations that these products contain natural and artificial flavors. FAC ¶ 24.[2]

Since, by definition, under the FDA regulations, maple syrup is a sweetener, Defendant's attempt to use express preemption as a shield is unavailing.[3] *See Trazo v. Nestle USA, Inc*., 2013 WL 4083218, at *6 (N.D. Cal.

---

[2]     It is for this reason that Defendant's speculation that if the Court does not find preemption in this case, "[m]anufacturers would be forced to alter their flavor labeling to prevent lawsuits whenever a characterizing flavor ingredient could hypothetically serve more than one function . . . ." (Def. Br. 9 at 20-22) is baseless. Defendant's competitors who do in fact sweeten their instant oatmeal with maple syrup and brown sugar and include natural and artificial flavoring language on the products (FAC ¶ 24), would not need to change their labels.
[3]     Defendant misses the mark when its contends that because "this Court already concluded, Quaker does not market its oatmeal as maple syrup or table syrup," Plaintiffs' claims are preempted. *See* Defs' Br. At 8, fn. 1.  As this Court has noted, "[Plaintiffs] assert that the '[NLEA's maple exception] allows states to

Aug. 9, 2013) ("[P]reemption is an affirmative defense, not an element of [p]laintiff['s] claims...[defendant] bears the burden of establishing that preemption applies."); *see also Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 251 n.2 (2011).

### 2.   The FDA Regulations That Quaker Oats Relies on are Inapplicable to Plaintiffs' Sweetener Claims

The Court correctly observed that a threshold issue that must be addressed in this case is whether to consider the preemptive effect of federal flavoring regulations or sweetener regulations. Dkt. No. 50, Order at 7.  The Court read the complaint as alleging that "Defendant misrepresented the presence of maple syrup in the context of flavoring, not sweetening." *Id*.  Plaintiffs have now amended their complaint to clarify the allegation that Quaker Oats misrepresented that the Products are *sweetened* with maple syrup. *See* FAC ¶¶ 2, 23-24.

Defendant does not argue that the labels comply with any FDA sweetener regulations.  Instead, it argues that the labeling complies with the FDA flavoring regulations.  This argument is unavailing because the FDA's flavoring regulations do not apply to sweeteners.  *See Holk v. Snapple Beverage Corp*., 575 F.3d 329, n.3 (3d Cir. 2009) ("the FDA appears to consider [high fructose corn syrup] a sweetener and not a flavoring, and thus the allegedly troublesome federal statute, § 343(k), would be inapplicable); *see also, Viggiano v. Hansen Nat. Corp*., 944 F. Supp. 2d 877, 889 (C.D. Cal. 2013) (where the FDA regulations identified sucralose and ace-K as sweeteners, the flavor regulations did not apply).

Further, "the factual determinations of whether [a food substance] is used as a sweetener...in this particular product, and whether a reasonable consumer would have thus been misled...are inappropriate for determination on a motion to

---

regulate the standard of identity (which includes the common or usual name) when maple syrup is represented as an ingredient in a product'—**which is the case here**.") Dkt. 50, Order at 7 (emphasis added). Plaintiffs' assertion is that maple syrup is represented as an ingredient in the product, not that Quaker Oats represents the entire oatmeal product as being maple syrup.

dismiss." *Ivie v. Kraft Foods Glob., Inc.*, No. C-12-02554-RMW, 2013 WL 685372, at *10 (N.D. Cal. Feb. 25, 2013) (Because plaintiff did not seek to impose any requirements in excess of the FDCA, the claims based on "no artificial sweeteners or flavors" labels on the challenged drink mix were not preempted and survived the motion to dismiss.); *accord, Engurasoff v. Coca-Cola Co.*, No. C 13-03990 JSW, 2014 WL 4145409, at *4 (N.D. Cal. Aug. 21, 2014) ("The Court concurs with the finding of the court in *Ivie* and finds that it cannot make a factual determination upon a motion to dismiss as to whether phosphoric acid qualifies as an artificial flavor.").

Likewise, here the flavoring regulations do not apply to sweeteners such as maple syrup and brown sugar, and any factual dispute as to whether maple syrup is a sweetener or a flavoring is a factual determination that should not be made on a motion to dismiss.[4]

### 3. Quaker Oats' Label Violates the FDCA Requirement Applicable to Sweeteners

This Court has recognized that the FDCA requires that a food label include "the common or usual name of each . . . ingredient . . . except that spices, flavorings, and colors...may be designated as spices, flavorings, and colorings without naming each." *See* 21 U.S.C. § 343(i)(2); 21 C.F.R. § 101.4 (a)(1) and (b)(1); *see also,* Dkt. No. 50, Order, at 8. For the reasons discussed above, the exception to this rule for flavorings does not apply to the Products. Sweeteners such as maple syrup and brown sugar must be designated by the common or usual name. Therefore, Quaker Oats' Label fails to comply with this regulation.

---

4   Defendant's reliance on cases where courts found that plaintiffs' claims were preempted by compliance with flavoring regulations (Defs. Br. 7:16-20) is misguided. As Defendant notes, in those cases, the plaintiffs did not allege that the absent ingredients were represented by the company to be sweeteners in the product. Further, fruits and fruit juices, such as blueberries and pomegranates can be flavorings. *See* 21 C.F.R. § 101.22 (a)(7). Therefore, Defendant's cases are not instructive here.

In addition, because maple syrup and maple sugar are sweeteners that consumers reasonably expect to be in the Products as characterizing ingredients (*see* FAC ¶¶ 2, 23-24, 29), 21 C.F.R. § 102.5, which governs how characterizing ingredients are to be designated on a label governs. 21 C.F.R. § 102.5(c) provides in pertinent part:

> [t]he common or usual name of a food shall include a statement of the presence or absence of any characterizing ingredient(s) or component(s) . . . when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present when it is not.

Here, maple syrup is a premium ingredient, which has a material bearing on the price and consumer acceptance of the Products. *See* FAC ¶¶29, 30. The Products' labeling does not disclose the absence of this characterizing ingredient and therefore violates 21 C.F.R. § 102.5(c).

### 4. Plaintiffs Do Not Seek A Preempted Result

Because the flavoring regulations do not apply to sweeteners such as maple syrup, Plaintiffs do not seek to impose any labeling requirements inconsistent with or in addition to federal law. Instead, Plaintiffs allege violations of consumer-protection laws related to deceptive marketing and advertising. "Such cases are not in the sole purview of the FDA; indeed, courts routinely resolve such claims." *See Martin v. Tradewinds Beverage Co.*, No. CV 16-9249 PSG-MRW, 2017 WL 6816608, at *3 (C.D. Cal. Sept. 5, 2017) (*quoting Fisher v. Monster Beverage Corp.*, 656 Fed. Appx. 819, 824 (9th Cir. 2016); *see also Gallagher v. Bayer AG*, 2015 WL 1056480, at *4 (N.D. Cal. Mar. 10, 2015) ("[S]tate-law claims are preempted only 'where application of state laws would impose more or inconsistent burdens on manufacturers than the burdens imposed by the FDCA.'"). For these reasons, Defendant's motion to dismiss on the grounds that

Plaintiffs' claims are expressly preempted should be denied.[5]

## C. The FAC Adequately Pleads That The Labels Are Deceptive

Plaintiffs' consumer fraud claims are evaluated from the vantage point of a reasonable consumer. *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). "Under the reasonable consumer standard, [plaintiffs] must show that members of the public are likely to be deceived."[6] *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (internal quotations omitted); *see also Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759 (7th Cir. 2014) ("question whether [a product's] packaging was likely to mislead a reasonable consumer is common to the claims of every class member" in eight state class including California, Illinois, and New Jersey); *Aspinall v. Philip Morris Co., Inc.*, 813 N.E.2d 476, 488 (Mass. 2004) ("an advertisement is deceptive when it has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted (*i.e.*, to entice a reasonable consumer to purchase the product)."). The laws at issue prohibit not

---

[5]     Because the FDCA and various state laws invoked in the FAC, such as the California Sherman Law, contain *identical* prohibitions on false and misleading labeling, they are therefore, not preempted. *Zupnick v. Tropicana Prods., Inc.*, No. CV 09-6130 DSF (RZx), 2010 WL 6090604, at *2 (C.D. Cal. Feb. 1, 2010). This Court agreed that the federal statute and the California Sherman Law invoked by Plaintiffs here can, on some occasions, permit actions for misrepresentation against products that comply with the FDCA. Order at 11, n. 4. However, the Court concluded that this is not one of those occasions because "Plaintiffs' claims for misrepresentation are premised on labeling that is compliant because it is expressly permitted by federal statute, not compliant simply because it does not run afoul of federal statute." *Id.* Plaintiffs respectfully submit that because the flavoring regulations do not apply here, and therefore the conduct is not expressly permitted by the federal statute, the Court should find that this is one of those occasions where the claims for false advertising are not preempted.

[6]     "However, the reasonable consumer test does not apply to claims brought under the unlawful prong of the UCL." *Perez v. Kroger Co.*, No. 2:17-cv-02448-ODW, 2017 WL 3601998, at *3 (C.D. Cal. Aug. 18, 2017); *See Daro v. Superior Court*, 151 Cal.App.4th 1079, 1099 n.9 (2007); *Gitson v. Trader Joe's Co.*, No. 13-1333, 2013 WL 5513711, at *6 n.5 (N.D. Cal. Oct. 4, 2013). Here, Plaintiffs' allegations under the California UCL are predicated on violations of the Sherman Law (FAC ¶ 43-45) and therefore the reasonable consumer test does not apply to this claim.

only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public. *Williams*, 552 F.3d at 938. The reasonable consumer need not be "exceptionally acute and sophisticated," nor "wary or suspicious of advertising claims." *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 509–10 (2003).

"Whether a business practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and which usually cannot be made on demurrer." *Id.* at 938–39 (quoting *McKell v. Wash. Mut., Inc.*, 142 Cal. pp.4th 1457, 1472 (2006)). Dismissal on such grounds is appropriate "only in rare situations" when "the advertisement itself made it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Id.* at 939.

### 1. The Labels Are Likely to Mislead a Reasonable Consumer into Believing the Products Contain Maple Syrup When They Do Not

This is not a "rare situation" where the label itself makes it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived. On the front of the Products' packaging appears the phrase:



prominently in white, large font in the name of the product, alongside a glass pitcher of maple syrup. Foods prominently declared front and center on labels of food products are reasonably interpreted as being contained in the food product. "The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label . . . ." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 327 (2011).

Maple and Brown Sugar are the largest and most prominently featured food items on the Products' labels—arguably even more prominent than oatmeal. Maple syrup and maple sugar are common toppings on oatmeal, and maple syrup

has a close association in consumers' minds with oatmeal and breakfast.[7] Notably, brown sugar is also prominently displayed, and brown sugar is also a sweetener. Therefore, consumers have every reason to believe the same for maple, which is displayed as prominently as, and in front of, brown sugar.  And given Quaker Oats' consistent "healthy" marketing campaigns, consumers are likely to think its products contain healthy, high-quality sweetening ingredients like maple syrup.[8] It is therefore probable for a reasonable consumer to believe the Labels' representations that the Products contain maple syrup.

Quaker Oats tries unpersuasively to tease out a dubious distinction between "maple," "maple syrup," and "maple sugar" as a matter of law. However, that same argument was correctly rejected in *Saidian v. Krispy Kreme Doughnut Corp.*, No. 2:16-cv-08338-SVW(AFMx), 2017 WL 945083, at *3 (C.D. Cal. Feb. 27, 2017). The *Saidian* court properly applied the reasonable consumer standard to products named "Maple Ice Glaze" and "Maple Bar" doughnut, and denied a motion to dismiss, reasoning: "Krispy Kreme fails to explain why this is one of those rare situations" in which a reasonable consumer question can be resolved on a motion to dismiss. The court held that it was "plausible that [p]laintiff will be able to show that reasonable consumers believe that . . . 'Maple Iced Glazed' and 'Maple Bar' doughnuts contain maple syrup or maple sugar." *Id.*[9] Like the maple products at issue in *Saidian* and the guacamole dip in *Henderson*, the Products here do not present the rare situation where the reasonable consumer's interpretation of "Maple & Brown Sugar" can be determined on a motion to dismiss. The reasonable consumer question is what controls, not some legal

---

[7] This association is reinforced by the image of the pitcher of maple syrup on the package.

[8] *See* FAC, ¶¶ 19-21 (citing maple syrup's health and nutrition advantages over other sweeteners).

[9] *See also Henderson v. Gruma Corp.*, 2011 WL 1362188 at *12 (C.D. Cal. Apr. 11, 2011) (reasonable consumer could believe that product marketed as "Guacamole Flavored Dip" contained avocado).

1   determination entirely divorced from consumer perception.

2        Consistent with the foregoing, other authorities reinforce the plausibility of

3   Plaintiffs' interpretation. On March 10, 2016, thirty one members of Congress

4   sent a letter to FDA, seeking investigations into products that "seem to

5   intentionally mislead consumers" by "tout[ing] 'maple' boldly on the front of the

6   package . . . but show[ing] no maple at all on the ingredients list. See March 10,

7   2016 letter available at https://www.leahy.senate.gov/imo/media/doc/

8   FINAL_Letter_FDA_Maple%20Labeling_3.10.16.pdf (last visited Feb. 5, 2018).

9   In addition, the Massachusetts Maple Law associates maple with maple syrup,

10  treating them as interchangeable. M.G.L. c. 128, § 36C ("The use of the words

11  'maple' or 'maple syrup', shall not be used in the labelling or branding of any

12  food product which does not contain any maple syrup in its ingredients."). There

13  are also other similar state maple laws which, although not implicated in this case,

14  provide additional evidence on the equivalence of "maple" and "maple syrup" and

15  the expectation of reasonable consumers when confronted with products branded

16  as "maple."[10] And, in this case not only does the word maple appear prominently

17  on the label of a product regularly sweetened with maple syrup, but there is also a

18  picture of a large glass pitcher of maple syrup to reinforce the consumer

19  impression.

20       Moreover, while this Court granted the prior motion to dismiss and

21  dismissed Plaintiffs' state law claims on preemption grounds, it appeared to agree

22  with Plaintiffs' contention that Quaker Oats represented the presence of maple

23  syrup in the Products. *See* Dkt. No. 50, Order at 7 (("*[Plaintiffs] assert that* the

24  '[NLEA's maple exception] allows states to regulate the standard of identity

25  (which includes the common or usual name) when maple syrup is represented as

26

27  _____

    [10]    *See*, *e.g.*, N.H. Rev. Stat. §§ 429:16, 429:17 (New Hampshire); and 6

28  V.S.A. §§ 492, 493 (Vermont).

1    an ingredient in a product'—**which is the case here**.") (emphasis added).

2         Quaker Oats' other arguments to the contrary are unavailing, and at best,

3    raise an issue of fact not properly decided on a motion to dismiss. First, Quaker

4    Oats relies on the statement SERVING SUGGESTION ("serving suggestion") in the lower right-

5    hand corner cluttered with other words. The phrase appears far from any reference

6    to maple syrup, and no consumer who actually noticed the statement would think

7    it referred to maple syrup.[11] To accept Quaker Oats' argument is to permit any

8    false, prominent label declaration regarding absent food contents so long as the

9    label states that the missing food was only a serving suggestion. That would create

10   a massive loophole and render labels meaningless.

11        Quaker Oats also relies on the words NATURALLY & ARTIFICIALLY FLAVORED (which reads

12   "NATURALLY & ARTIFICIALLY FLAVORED"). This statement does not

13   make it impossible for a reasonable consumer to believe maple syrup is in the

14   Products. First of all, reasonable consumers are not likely to notice these

15   camouflaged words in a font and a color scheme that appears to be engineered to

16   go unnoticed. It is set against a barely distinguishable lighter brown background.

17   The type size is so much taller than it is wide, and the letters are so condensed,

18   that as soon as one's eyes adjust for the lack of contrast, the individual letters

19   blend together into barely legible words. Reasonable consumers do not spend

20   hours upon hours in the grocery store inspecting each and every label on

21   consumer products witSh magnifying glasses to ascertain the meaning of illegible

22   disclaimers. Reasonable consumers need not be exceptionally acute nor wary.

23   *Lavie*, 105 Cal. App. 4th at 509–10.

24

25

---

26   [11]     Moreover, this statement appears nowhere near the image of the maple
     syrup pitcher on the package, so the "serving suggestion" could not possibly be
27   referring to the maple syrup, but if anything, would more likely be referring to the
     berries in the adjacent bowl of oatmeal.
28

1      Furthermore, Quaker Oats assumes incorrectly that reasonable consumers

2 must construe NATURALLY & ARTIFICIALLY FLAVORED, as excluding all real maple, but that is

3 incorrect. A reasonable consumer who is observant enough to detect this statement

4 could appreciate this language and still believe that the Products contain maple

5 syrup. Just because the Products might contain natural and artificial flavors does

6 not mean they cannot also contain maple syrup, as the labels prominently

7 represent. The FAC alleges that "instant oatmeal products in the marketplace that

8 make materially the same claims as made by Quaker Oats here actually contain

9 maple sugar and brown sugar as sweetening ingredients in addition to natural and

10 artificial flavors." FAC, ¶ 24. Also, nothing makes clear that

11 NATURALLY & ARTIFICIALLY FLAVORED refers to maple. The phrase does not immediately precede

12 or follow the word maple, and so the consumer has reason to believe real maple

13 syrup is an ingredient.

14     *Williams v. Gerber* involved a similar situation where Gerber's "Graduates

15 for Toddlers Fruit Juice Snacks" was stated above the nondescript statement

16 "naturally flavored." 552 F.3d at 941. The Court still held that a reasonable

17 consumer could be misled by the labeling, which potentially suggested (falsely)

18 that fruits depicted on the label were contained in the product. *Id.* at 939.  In

19 reaching this conclusion, the Court considered the entire product label, including

20 Gerber's "naturally flavored" language, and then rejected the argument made by

21 Quaker Oats here, that no reasonable consumer could be misled in the face of its

22 "naturally & artificially flavored" language (which is very similar to Gerber's

23 "naturally flavored" statement).

24     Quaker's argument that the ingredient list renders its labels non-misleading

25 as a matter of law has been repeatedly rejected under Ninth Circuit law.

26 Specifically, Quaker Oats argues that the absence of maple syrup in the long

27 federally mandated list of ingredients, which includes a litany of multi-syllabic

28 chemical compounds in the least visible corner of the side panel, disabuses

reasonable consumers of any belief that maple syrup is an ingredient. The Ninth Circuit has rejected the argument:

> that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. . . . We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.

*Williams*, 552 F.3d at 936. The clear message conveyed by "Maple & Brown Sugar" in prominent letters next to a depiction of a pitcher of maple syrup is that the Products were sweetened with maple syrup or maple sugar. Quaker Oats cannot use an ingredient list in the fine print supplied elsewhere to shield itself from liability for its prominent deceptive declarations on the front labels.

The FDA's September 2016 Consumer Update (made after the lawsuit was filed) which Plaintiffs could not have seen—to the extent it is relevant— actually shows that a reasonable consumer is likely to be deceived by the Products' labels. *See Anderson v. The Hain Celestial Grp., Inc.*, 87 F. Supp. 3d 1226, 1237 n.4 (N.D. Cal. 2015) (FDA's opinion on "natural" is not commentary on whether or not use on food labels would mislead a reasonable consumer operating under a common understanding of its meaning). The Update begins by acknowledging that:

> [I]f you're digging into a bowl of cereal that has the word "maple" on the package, and even images of maple leaves, ***you may think you're eating a product that contains maple syrup***.

Meltzer Decl., Ex. 1 at 3 (emphasis added). The FDA has thus endorsed Plaintiffs' reasonable interpretation and has dispelled any false distinction between maple and maple syrup.

In addition, Quaker Oats' argument that reasonable consumers do not expect sweeteners to be prominently or boldly displayed on the packaging of food products (Def's. Br. at 14:25-15:11) is presumptuous, wrong, and contrary to well-settled law that labels matter.  Quaker Oats makes this assertion about consumer

expectations without the slightest support and in contradiction to the allegations in the FAC.  The FAC makes clear that maple syrup is a natural, healthier, and more nutritious sweetener than cane sugar and other common sweeteners, that food products represented as sweetened with maple syrup command a premium in the marketplace and have a material bearing on consumers' decision to purchase. FAC ¶¶ 19-21, 25, 29.

Quaker Oats also appears to make much of the fact that Plaintiffs compared the Apple & Cinnamon label to the Maple & Brown Sugar label. Defendant argues that the comparison Plaintiffs are making are a reference to flavors. *See* Def.'s Br. at 13, 15 (referencing Apples & Cinnamon variety).  Defendant is mistaken. To clarify, the comparison was simply to show that like here, the Apple & Cinnamon product actually contains real apples and cinnamon as ingredients (not flavors or sweeteners) and therefore the term "naturally and artificially flavored" is not modifying the phrase "Apples & Cinnamon."  So too, here, Plaintiffs would reasonably expect the Maple & Brown Sugar labeled package to include actual maple syrup (or maple sugar) and brown sugar as characterizing sweetening ingredients.  Like in the Apple & Cinnamon variety, the term naturally and artificially flavored would not modify (as Defendant attempts to argue) "Maple and Brown Sugar." Further, one cannot credibly argue that brown sugar is not a sweetener—yet it is part of what Quaker Oats characterizes as a flavor variety.

None of the cases cited by Quaker Oats on the reasonable consumer issue support its position here, for a variety of reasons. *Stiles v. Trader Joe's*, 2017 WL 3084267 (C.D. Cal. Apr. 4, 2017) is factually distinguishable, as the Court in that case placed substantial reliance on the fact that "the [Trader Joe's] packaging does not juxtapose pictures of maple syrup or maple sugar with the word maple." *Id.* at *4.  The Products, on the other hand (as discussed above), prominently display a pitcher of maple syrup on the labels in close proximity to "Maple & Brown

Sugar."  A reasonable consumer would, therefore, view the Products' labeling as conveying that the Products contain maple syrup.  Further, the conclusion reached in *Stiles* is contrary to the contemporaneous decision in *Saidian*, *supra*.

In *Dvora v. General Mills, Inc.*, 2011 WL 1897349 (C.D. Cal. May 16, 2011), unlike here, the challenged food product did not resemble the labeled ingredient, and the labeled ingredient was not depicted on the front label.

Quaker Oats' reliance on the *McKinnis* cases[12] is also misplaced.  These cases pre-date and contravene the Ninth Circuit's holding in *Williams* that federally required ingredient lists do not shield manufacturers from liability when they make misrepresentations about the product on the front of label.  *Id.* at 939. As discussed above, the Ninth Circuit in *Williams* concluded that reasonable consumers would be deceived despite the fact that the product's front packaging contained the "naturally flavored" disclosure in close proximity to the words "Fruit Juice Snacks."  *See id.* at 941 (image of product label).

### 2.     Plaintiffs' Unjust Enrichment Claims Are Adequately Pled

The entire basis for Quaker Oat's argument against Plaintiffs' unjust enrichment claims hinges on its assumption that Plaintiffs' consumer fraud claims are not actionable. *See* Def.'s Mot. 16. As shown above, Plaintiffs' FAC pleads actionable consumer fraud. "The Ninth Circuit has construed the common law to allow an unjust enrichment/restitution cause of action through a claim of quasi-contract." *Goldman v. Bayer AG*, No. 17-CV-0647-PJH, 2017 WL 3168525, at *8 (N.D. Cal. July 26, 2017). "To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038–39 (9th Cir. 2016) (citing *Lectrodryer v. SeoulBank*, 77 Cal.App.4th

---

[12] *McKinnis v. General Mills, Inc.*, 2007 WL 4762172 at *3-4 (C.D. Cal. Sept. 18, 2007); *McKinnis v.Kellogg USA*, 2007 WL 4766060 at *4 (C.D. Cal. Sept. 19, 2007); and *McKinnis v. Sunny Delight Beverages Co.*, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007).

723, 726 (2000)). Plaintiffs have adequately alleged that they and other Class members conferred a benefit upon Quaker Oats in the form of the excess prices they paid for the Products labeled and packaged as containing maple syrup, over and above the actual value of the Products, and that Quaker Oats accepted and retained this benefit. FAC ¶¶ 105–110.

## IV.        CONCLUSION

For the reasons above, Quaker Oat's motion to dismiss should be denied.  If the Complaint is found to be deficient in any respect, Plaintiffs respectfully request leave to amend in order to cure any deficiencies.

Moreover, with respect to the injunctive relief claims, Plaintiffs agree that they have not changed their allegations to allege that they intend to purchase the Products in the future.

Dated: February 5, 2018                    Respectfully submitted,


By:   /s/David C. Parisi

David C. Parisi (SBN 162248)
PARISI & HAVENS LLP
212 Marine Street, Suite 100
Santa Monica, CA 90405
Tel: (818) 990-1299
Fax: (818) 501-7852
dcparisi@parisihavens.com

Erich P. Schork (*pro hac vice*)
BARNOW AND ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, IL  60602
Tel: (312) 621-2000
Fax: (312) 641-5504
e.schork@barnowlaw.com

*Plaintiffs' Interim Co-Lead Counsel*

Thomas A. Zimmerman, Jr.
(*pro hac vice*)
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220

Chicago, IL 60602
Tel: (312) 440-0020
Fax: (312) 440-4180
tom@attorneyzim.com

David Pastor (*pro hac vice*)
PASTOR LAW OFFICE, LLP
63 Atlantic Avenue, 3d Floor
Boston, MA 02110
Tel: (617) 742-9700
Fax: (617) 742-9701
dpastor@pastorlawoffice.com

*Plaintiffs' Executive Committee*

# CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

*/s/David C. Parisi*
David C. Parisi (SBN 162248)
PARISI & HAVENS LLP
212 Marine Street, Suite 100
Santa Monica, CA 90405
Tel: (818) 990-1299
Fax: (818) 501-7852
dcparisi@parisihavens.com

OPPOSITION TO MOTION TO DISMISS