ANDREW S. TULUMELLO, SBN 196484
  ATulumello@gibsondunn.com
JASON R. MELTZER, *admitted pro hac vice*
  JMeltzer@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone:  202.955.8500
Facsimile:   202.467.0539

Attorneys for Defendant
QUAKER OATS COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE QUAKER OATS MAPLE & BROWN SUGAR INSTANT OATMEAL LITIGATION | MASTER FILE NO. 2:16-cv-1442<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**Hearing:**<br>Date: March 19, 2018<br>Time: 1:30 p.m.<br>Courtroom: 6A<br>Judge: Hon. Philip S. Gutierrez |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................1

ARGUMENT ..................................................................................................................2

    I.    QUAKER HAS TWICE DEMONSTRATED THAT PLAINTIFFS' CLAIMS ARE PREEMPTED BY THE FEDERAL FOOD, DRUG, AND COSMETIC ACT ..................................................2

        A.    FDA Regulations, FDA Publications, And Common Sense Agree: Maple Is A Flavor. ..............................................................2

        B.    The Challenged Labeling Complies With Applicable Flavor Labeling Regulations. ......................................................................3

        C.    Plaintiffs' Opposition Fails To Establish That Quaker Violates *Any* FDA Regulations. ...................................................5

        D.    Plaintiffs Seek A Preempted Result. .....................................................7

    II.    PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM OF DECEPTION. .................................................................................................7

        A.    No Reasonable Consumer Would Be Misled In The Way Plaintiffs Allege. ..................................................................................8

        B.    Plaintiffs' Arguments Regarding The Appearance Of The "NATURALLY AND ARTIFICIALLY FLAVORED" Statement Are Unavailing. ..........................................................10

        C.    Plaintiffs Fail To Distinguish *Stiles*. ..................................................11

CONCLUSION ............................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................. 3

*Coe v. Gen. Mills, Inc.*,
   No. 15-CV-05112, 2016 WL 4208287 (N.D. Cal. Aug. 10, 2016) ........................... 6

*Dvora v. Gen. Mills, Inc.*,
   No. 11-cv-1074, 2011 WL 1897349 (C.D. Cal. May 16, 2011) ......................... 7, 11

*Engurasoff v. Coca-Cola Co.*,
   No. 13-cv-3990, 2014 WL 4145409 (N.D. Cal. Aug. 21, 2014) ........................... 4, 5

*Hairston v. S. Beach Beverage Co.*,
   No. 12-cv-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) .............................. 12

*Henderson v. Gruma Corp.*,
   No. 10-cv-4173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) .............................. 10

*Henry v. Gerber Prods. Co.*,
   No. 3:15-cv-02201, 2016 WL 1589900 (D. Or. Apr. 18, 2016) ............................... 7

*Holk v. Snapple Beverage Co.*,
   575 F.3d 329 (3d Cir. 2009) ...................................................................................... 4

*Ivie v. Kraft Foods Global, Inc.*,
   No. 12-cv-2554, 2013 WL 685372 (N.D. Cal. Feb. 25, 2013) ................................. 4

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003) .................................................................................... 8

*McKinniss v. Gen. Mills, Inc.*,
   No. 07-cv-2521, 2007 WL 4762172 (C.D. Cal. Sept. 18, 2007) ................ 7, 8, 11, 12

*Saidian v. Krispy Kreme Doughnut Corp.*,
   No. 2:16-cv-08338-SVW, 2017 WL 945083 (C.D. Cal. Feb. 27, 2017) ................... 9

*Shaker v. Nature's Path Foods, Inc.*,
   No. 13-cv-1138, 2013 WL 6729802 (C.D. Cal. Dec. 16, 2013) ............................. 12

*Stiles v. Trader Joe's Co.*,
   No. 16-cv-04318-TJH-KSx, 2017 WL 3084267 (C.D. Cal. Apr. 4,
   2017) ................................................................................................................... 9, 11

*Viggiano v. Hansen Natural Corp.*,
   944 F. Supp. 2d 877 (C.D. Cal. 2013) ............................................................... 4, 12

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ......................................................................... 9, 10, 12

**Statutes**

21 U.S.C. § 343 ....................................................................................................... 5

**Rules**

Fed R. Civ. P. 12(b)(6) ............................................................................................ 7

**Regulations**

21 C.F.R. § 101.4 .................................................................................................... 5

21 C.F.R. § 101.22 ................................................................................. 2, 4, 5, 8, 11

21 C.F.R. § 102.5 .................................................................................................... 6

21 C.F.R. § 170.3 .................................................................................................... 2

21 C.F.R. § 172.510 ................................................................................................ 2

**Other Authorities**

Food & Drug Administration, Consumer Update*: What's in a Name?*
   *What Every Consumer Should Know About Foods and Flavors* (Sept.
   2016) ....................................................................................................................... 2

## INTRODUCTION

Plaintiffs dedicate the bulk of their Opposition to insisting that maple syrup is a sweetener. This fails to salvage their claims. Plaintiffs' contention that maple syrup is a sweetener does not change how the Food & Drug Administration ("FDA") permits Quaker to convey information to consumers about the taste of its instant oatmeal. Quaker sells products that taste like maple and brown sugar. Plaintiffs do not argue otherwise. FDA regulations establish that Quaker can inform consumers about the maple flavor of its instant oatmeal, regardless of whether it *contains* maple syrup. Those regulations permit Quaker to use words (like "Maple & Brown Sugar") and vignettes (like an image of a pitcher of syrup) to convey the taste, provided that the label also states "NATURALLY AND ARTIFICIALLY FLAVORED." Quaker has done exactly that—as this Court has already acknowledged—and that alone resolves this case.

Plaintiffs do not allege in their First Amended Consolidated Complaint ("FAC") or argue in their brief that Quaker violates *any* regulations specific to sweeteners, as this Court cautioned they must to escape preemption. Instead, Plaintiffs cobble together unrelated and inapposite FDA regulations, such as the standards of identity for "catsup" and "eggnog," in a futile attempt to find references to sweeteners. Their effort does not make sense and fails to state a claim.

Moreover, Plaintiffs' FAC still seeks to force Quaker to change its lawful and non-misleading flavor labeling, a result that is plainly preempted. And if for any reason the new "sweetener" theory were not preempted, no reasonable consumer would misunderstand "maple and brown sugar flavored" labeling to promise a product containing maple syrup (as a flavor *or* sweetener), as another court in this District recently held. Plaintiffs' claims must be dismissed, this time *with prejudice*.

# ARGUMENT

## I. QUAKER HAS TWICE DEMONSTRATED THAT PLAINTIFFS' CLAIMS ARE PREEMPTED BY THE FEDERAL FOOD, DRUG, AND COSMETIC ACT.

### A. FDA Regulations, FDA Publications, And Common Sense Agree: Maple Is A Flavor.

Plaintiffs assert that "[u]nder the FDA regulations, maple syrup is a sweetener and not a flavoring," and therefore their claims are not preempted. Opp. 5-7. This argument fails on multiple bases. First, "Maple," derived from *Acer spicatum Lam*, the mountain maple tree, appears in FDA's list of *flavors*. 21 C.F.R. § 172.510. A "flavor" is an ingredient "whose significant function in food is flavoring rather than nutritional." 21 C.F.R. § 101.22(a)(3). It is indisputable as a matter of FDA regulation—and common sense—that maple can "impart or help impart a taste or aroma in food," as required to be a flavoring agent under FDA regulations. *See* 21 C.F.R. § 170.3(o)(12).

Second, in addition to FDA regulations, the agency's Consumer Update about flavor labeling uses maple as its *primary* example. *See* FDA Consumer Update*: What's in a Name? What Every Consumer Should Know About Foods and Flavors* (Sept. 2016), ECF No. 54-4 at 29. It alerts consumers to the fact that foods with "'maple' on the package" may derive their "**taste** . . . from added **flavors**." *Id.* (emphasis added). It unequivocally states: "[c]urrent regulations allow use of terms like '**maple**,' '**maple-flavored**,' or '**artificially maple-flavored**' on the food label without having any maple syrup in the product, as long as it contains **maple flavoring**." *Id.* (emphasis added). It also explains that "maple" "flavoring c[an] come from a number of sources, including sap or bark from the maple tree . . . [o]r . . . the herb fenugreek, which can impart a maple-like flavor." *Id.* Finally, FDA proclaims, "if you don't want a substitute source of the **flavor** you're seeking—if, say, you want real maple syrup in your food—the information you need will be in the ingredient list

on the food package." *Id.* at 30 (emphasis added). FDA has made clear that "maple" is a flavor.

Third, as this Court has already noted, and contrary to Plaintiffs' suggestion, Quaker *nowhere* on the packaging represents that the Products are, or contain, "maple syrup" or "maple sugar." *See* Order, ECF No. 50, at 13 ("Nowhere on the Products' labels does Defendant assert that maple syrup is an ingredient within"). As Quaker has previously explained (*see, e.g.,* Mot., ECF No. 54, at 3), Plaintiffs' reliance on standard of identity regulations pertaining to "maple sirup," "table sirup," "eggnog," "acidified milk," "catsup" and "yogurt" (Opp. at 5), are entirely inapposite to the maple flavor labeling on *instant oatmeal*. Plaintiffs fail to identify *any* sweetener regulation applicable to the Products.

The Court should not leave its common sense at the door when considering the plausibility of Plaintiffs' assertion that maple *cannot* be a flavor. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[D]etermining whether a complaint states a plausible claim" is context-specific, "requir[ing] the reviewing court to draw on its experience and common sense."). Plaintiffs are simply incorrect that maple is not a flavor (as FDA has explicitly acknowledged), and their novel "sweetener" theory has no support and must be rejected.

### B. The Challenged Labeling Complies With Applicable Flavor Labeling Regulations.

While Plaintiffs try to frame the issue before the Court as a choice between applying sweetener regulations and flavoring regulations (Opp. 7), there is no such choice. As a threshold matter, there are no sweetener regulations to apply: Plaintiffs fail to cite *any* regulations requiring special labeling regarding the presence or absence of a sweetening ingredient. That should be the end of the case. Plaintiffs' claim that Quaker "does not argue that the labels comply with any FDA sweetener regulations" (Opp. 7), is nothing more than obfuscation.

1    Moreover, Plaintiffs' assertion that "FDA's flavoring regulations do not apply to
2 sweeteners" (Opp. 7) is misguided. The flavor regulations in 21 C.F.R. § 101.22(i) do
3 not apply to *ingredients* at all. They govern "direct or indirect **representations** with
4 respect to the primary recognizable flavor" of a food. *Id.* (emphasis added). And they
5 expressly permit foods to make representations about a food's characterizing flavor
6 even if the food "contains no such ingredient." 21 C.F.R. § 101.22(i)(1)(i). The
7 ingredients are only pertinent to determine whether the label must describe the product
8 as "naturally flavored," "artificially flavored," both, or neither. *Id.*

9    The cases Plaintiffs cite to attempt to avoid preemption are all inapposite. *See*
10 Opp. 7–8. Each involved a claim asserting that a "natural" or "artificial flavor" label
11 was false, or required, based on the *presence of an ingredient* in the ingredients list;
12 none of them dealt *at all* with whether the product's label described the product's
13 flavor. *See Holk v. Snapple Beverage Co.*, 575 F.3d 329, 336 n.3 (3d Cir. 2009)
14 (stating in dicta that defendant could not avoid a claim that its "All Natural" labeling
15 was false based on the use of high fructose corn syrup by relying on flavor
16 regulations); *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 889 (C.D. Cal.
17 2013) (flavor regulations preempted a challenge to "all natural flavors" labeling based
18 on the use of ace-K and sucralose);[1] *Ivie v. Kraft Foods Global, Inc.*, No. 12-cv-2554,
19 2013 WL 685372, at *10 (N.D. Cal. Feb. 25, 2013) (defendant could not evade claim
20 challenging falsity of "no artificial sweeteners or flavors" label by contending sodium
21 citrate is not a flavoring agent); *Engurasoff v. Coca-Cola Co.*, No. 13-cv-3990, 2014
22 WL 4145409, at *4 (N.D. Cal. Aug. 21, 2014) (flavor regulations did not preempt

---

[1] *Viggiano* aptly demonstrates that preemption turns on the challenged *labels*, not the ingredients at issue. While the court in *Viggiano* determined that ace-K and sucralose were not flavors because they did "not give the product an original taste," 944 F. Supp. 2d at 889, that did not mean that flavor labeling regulations were irrelevant to the case, as Plaintiffs contend here. To the contrary, because the *labels* at issue were about the products' taste ("all natural flavors"), the court found the claims were *preempted based on the defendant's compliance* with 21 C.F.R. § 101.22(i).

4

alleged failure to affirmatively identify phosphoric acid as an artificial flavor in the ingredients list).

Indeed, in *Engurasoff*, the court only found the flavor regulations inapplicable because "[n]either Plaintiffs nor Defendants contend that the Coke label makes any direct or indirect representation with respect to the primary recognizable flavor." 2014 WL 4145409, at *4. The opposite is true here. Plaintiffs do not and cannot seriously contend that Quaker's labels do not reference the "primary recognizable flavor" of the Products—particularly in light of FDA's repeated acknowledgement of "maple" as a flavor. Nowhere do Plaintiffs dispute that the Products taste like maple and brown sugar. Nor do Plaintiffs assert that Quaker violated requirements applicable to its "NATURALLY AND ARTIFICIALLY FLAVORED" statement. Nor do they claim that maple in the product is not natural or artificial. Rather, they assert that the Products *lack* maple syrup. The label does not state "contains maple syrup," however; it says "Maple & Brown Sugar, NATURALLY AND ARTIFICIALLY FLAVORED."

Preemption under the flavor regulations turns on the *label* at issue; not the ingredient. Because the label at issue here—"Maple & Brown Sugar"—is plainly a representation regarding the Products' primary characterizing flavor, 21 C.F.R. § 101.22(i) applies. And as Quaker already demonstrated, and as this Court agreed, Quaker's flavor labeling is lawful under that regulation. Order, ECF No. 50 at 9-10.

### C. Plaintiffs' Opposition Fails To Establish That Quaker Violates *Any* FDA Regulations.

Unable to point to any alleged violations of sweetener-specific regulations, Plaintiffs half-heartedly advance two new arguments, spanning two brief paragraphs, that Quaker violates general labeling requirements. Plaintiffs first contend that Quaker violated the requirement that a food's *ingredient list* contain "the common or usual name of each . . . ingredient . . . except that spices, flavorings, and colors...may be designated as spices, flavorings, and colorings without naming each." Opp. 8 (citing 21 U.S.C. § 343(i)(2); 21 C.F.R. § 101.4(a)(1), (b)(1)). They argue Quaker violated

Case 2:16-cv-01442-PSG-MRW Document 58 Filed 03/05/18 Page 10 of 18 Page ID #:646

this regulation by failing to designate maple syrup and brown sugar by their common or usual names. This argument is a farce. The *entire premise* of Plaintiffs' lawsuit is that the Products *do not contain* maple syrup. This statute and its incorporating regulation require a food label to display the common or usual name of each ingredient. They simply cannot apply to an ingredient *not* contained in the food.

      Plaintiffs' second argument—that Quaker violated the regulation governing the "common or usual name of a food," Opp. 9 (citing 21 C.F.R. § 102.5(c))—similarly misunderstands the regulation cited. Section 102.5, discussing "general principles" of "common or usual name[s]" for foods, does not apply to the specific flavor name for the Products in this case. The regulation notes that the "common or usual name of a food" must "accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food." 21 C.F.R. § 102.5(a); *Coe v. Gen. Mills, Inc.*, No. 15-CV-05112, 2016 WL 4208287, at *3 (N.D. Cal. Aug. 10, 2016). That "basic nature" of the food here is instant oatmeal. In *Coe v. General Mills*, plaintiffs challenged the labeling of "Cheerios Protein" under the same regulation based on the alleged failure to disclose the presence of sugar in the product, which the plaintiffs alleged was "material to a consumer's acceptance of the product." *Id.* The court disagreed, holding that "21 C.F.R. § 102.5(c) does not apply to 'Cheerios Protein' because that is not the product's common or usual name." *Id.* The court emphasized that "the term 'common or usual name' is meant to refer to a generic descriptive term,"—in that case, whole grain oat cereal. *Id.* Applying the same reasoning here, 21 C.F.R. § 102.5(c) does not apply to "Maple & Brown Sugar"; rather, it refers to the generic descriptive term listed on the Products: "instant oatmeal." *See also* 21 C.F.R. § 102.5(d) (noting that "a common or usual name of a food may be established by common usage or by establishment of . . . a standard of identity.").

      Plaintiffs do not allege that the Products are not actually instant oatmeal. They therefore have failed to plausibly assert a violation of C.F.R. § 102.5, or any other violation by Quaker of *any* food labeling regulation.

### D. Plaintiffs Seek A Preempted Result.

Plaintiffs' sweetener allegations also do not alter the preemption analysis because the *result* of permitting Plaintiffs' claims to proceed is equally preempted. Quaker's labels describe the flavor of the instant oatmeal products in exactly the way FDA requirements for flavor labeling permit. Plaintiffs seek equitable relief that would require changes to Quaker's labels. Thus, if Plaintiffs were to succeed, their lawsuit would require labeling that is "not identical to" FDA requirements for describing the primary recognizable flavor of the products, and their claims are therefore preempted. *See* Order, ECF No. 50, at 10 ("[T]he Court agrees with Defendant that Plaintiffs' 'lawsuit seeks to impose novel labeling requirements that are not identical to federal regulations.'"); *see also Henry v. Gerber Prods. Co.*, No. 3:15-cv-02201, 2016 WL 1589900, at *7 (D. Or. Apr. 18, 2016); *Dvora v. Gen. Mills, Inc.*, No. 11-cv-1074, 2011 WL 1897349, at *5 (C.D. Cal. May 16, 2011); *McKinniss v. Gen. Mills, Inc.*, No. 07-cv-2521, 2007 WL 4762172, at *3 (C.D. Cal. Sept. 18, 2007).

Plaintiffs do not dispute that they seek to force Quaker to alter its lawful flavor labeling. Rather, they state: "Defendant's competitors who do in fact sweeten their instant oatmeal with maple syrup and brown sugar and include natural and artificial flavoring language on the products . . . would not need to change their labels." Opp. 6 n.2. But the question is not whether *other* products with different ingredients meet Plaintiffs' proposed requirements; the question is whether the Products at issue *in this case* would be forced to change their labels to comply with *different* requirements than those imposed by FDA. Here, Plaintiffs' suit would require such a change, and they therefore seek a preempted result.

### II. PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM OF DECEPTION.

Even if Plaintiffs' claims survived preemption (and they do not), they cannot satisfy Rule 12(b)(6) and the *Twombly*/*Iqbal* standard. While it may be true that a reasonable consumer "need not be 'exceptionally acute and sophisticated,'" Opp. 11

(quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 509-10 (2003), neither can the reasonable consumer claim actionable deception when "viewing [a label] in an unreasonable manner." *Lavie*, 105 Cal. App. 4th at 508.

### A. No Reasonable Consumer Would Be Misled In The Way Plaintiffs Allege.

Plaintiffs call Quaker's common-sense assertion that reasonable consumers do not expect products to prominently display sweeteners—rather than flavors—in multiple places on the product packaging "presumptuous." Opp. 16. But Plaintiffs fail to offer any explanation for their purported reinterpretation of the instant oatmeal labels, which said neither "maple syrup," nor "maple sugar." *Id.* at 17.[2] No reasonable consumer could ignore the "NATURALLY & ARTIFICIALLY FLAVORED" label statement displayed immediately adjacent to each and every appearance of "Maple & Brown Sugar" on Quaker's packaging. *See, e.g.*, *McKinniss v. Gen. Mills, Inc.*, No. 07-cv-2521GAF-FMOx, 2007 WL 4762172, at *4 (C.D. Cal. Sept. 18, 2007) (noting presence of "Naturally and Artificially Flavored" statements directly below characterizing flavor descriptions in holding that reasonable consumers would not be deceived). This label statement indicates two facts that are fatal to Plaintiffs' claims: (1) "Maple & Brown Sugar" is a flavor label, and (2) the flavors come from natural and artificial sources.

None of Plaintiffs' arguments salvage their claim that "Maple & Brown Sugar NATURALLY & ARTIFICIALLY FLAVORED" constitutes a promise that the Products contain maple syrup or maple sugar. *See* Opp. 11. They first contend that the

---

[2] Plaintiffs confusingly defend their comparison of Quaker's Apples & Cinnamon label to the Maple & Brown Sugar label by erroneously asserting that the "NATURALLY & ARTIFICIALLY FLAVORED" label on the Apples & Cinnamon product cannot describe the phrase "Apples & Cinnamon" because the product contains those ingredients. Opp. 17. Plaintiffs once again demonstrate their misunderstanding of FDA regulations. For example, if a product contains the characterizing flavor's ingredient, but in an amount "insufficient to independently characterize the food," regulations require additional natural- or artificial-flavor labeling. 21 C.F.R. § 101.22(i)(1)(i). Thus, the Apples & Cinnamon Naturally and Artificially Flavored labels fully accord with the regulation, just like the Maple & Brown Sugar labels do.

1  Court has agreed with them on this point. Opp. 13; *see also id*. at 7 n.3. Not so. They
2  point to the Court's *description* of their own arguments—not any determination about
3  the label statements. *See* Order, ECF No. 50, at 7 (citing Pls.' Opp., ECF No. 47. at 6,
4  17-19). Rather, the Court concluded the *exact opposite*, in dismissing Plaintiffs'
5  express warranty claim and stating: "[n]owhere . . . does Defendant assert that maple
6  syrup is an ingredient within." Order, ECF 50, at 13. Plaintiffs also incorrectly
7  proclaim that FDA's September 2016 Consumer Update "endorsed" their
8  interpretation that the word *maple* equates to *includes maple syrup*. Opp. 16. To the
9  contrary, FDA's statement that "you may think you're eating a product that contains
10 maple syrup" expresses no opinion as to the reasonableness of that belief, and indeed
11 another court in this very District found that the same Consumer Update *supported* its
12 holding that no reasonable consumer could be deceived by "Maple & Brown Sugar"
13 labeling on instant oatmeal products. *Stiles v. Trader Joe's Co.*, No. 16-cv-04318-
14 TJH-KSx, 2017 WL 3084267, at *5 (C.D. Cal. Apr. 4, 2017) (appeal dismissed Feb.
15 28, 2018).[3]

16        Plaintiffs' reliance on *Saidian v. Krispy Kreme Doughnut Corp.*, No. 2:16-cv-
17 08338-SVW, 2017 WL 945083, at *3 (C.D. Cal. Feb. 27, 2017), is also misplaced.
18 Opp. 12. The "Maple Ice Glazed" and "Maple Bar" doughnuts at issue in *Saidian*
19 were **not accompanied by a disclosure** that the product was "naturally and artificially
20 flavored," and the plaintiff affirmatively alleged that his "belief was not unreasonable
21 because **no ingredients list was provided or made available to consumers**." *Id.* at *1
22 (emphasis added). Here, unlike in *Saidian*, every consumer purchasing the Products
23 was provided clear notice through the flavor disclosure **and** ingredients list that the
24 Products were flavored and did not contain maple syrup or maple sugar.

25

---

26  [3] Plaintiffs also cite a March 10, 2016, letter from certain members of Congress to
27  FDA to support their reading (Opp. 9), but they fail to acknowledge that FDA
    specifically responded to, and rejected, the position suggested in that letter in its
28  September 26, 2016, Consumer Update regarding "maple" flavor labeling.

Plaintiffs also speciously compare their allegations to those in *Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008), where plaintiffs challenged the labeling of "Graduates for Toddlers Fruit Juice Snacks." Opp. 15. As a threshold matter, both the district court and the Ninth Circuit in *Williams* acknowledged that FDA regulations may have permitted the challenged labeling, but the Ninth Circuit declined to rule on that basis because the issue was not briefed before the district court. 552 F.3d at 937, 940. In addition, the *Williams* court said nothing about the product's "naturally flavored" statement. Rather, it found that statements *beyond* the product's name and vignettes contributed to potential deception regarding the product's ingredients, pointing instead to the statement that the product was made with "fruit juice and other all natural ingredients" suggesting all the ingredients were natural, and to the statement that the product was "just one of a variety of nutritious Gerber Graduates foods and juices that have been specifically designed to help toddlers grow up strong and healthy." *Id.* at 939. Here, Plaintiffs have not alleged that the Products' flavor name and vignette are accompanied by separate statements that would cause confusion.[4]

### B. Plaintiffs' Arguments Regarding The Appearance Of The "NATURALLY AND ARTIFICIALLY FLAVORED" Statement Are Unavailing.

Unable to avoid the fact that Quaker's "NATURALLY & ARTIFICIALLY FLAVORED" statement dispels any potential for consumer confusion, Plaintiffs suggest that the label itself is not noticeable. Opp. 14. However, Plaintiffs *nowhere* alleged in their First Amended Consolidated Complaint that Quaker's "NATURALLY & ARTIFICIALLY FLAVORED" labels are somehow imperceptible to the reasonable

---

[4] Plaintiffs' reliance (Opp. 12) on *Henderson v. Gruma Corp.*, No. 10-cv-4173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011), is also misplaced. In *Henderson,* the court did not conduct any flavor labeling preemption analysis. Moreover, the *Henderson* court found that the large "Guacamole" label, pictures of avocados, and green appearance of the dip through the transparent packaging, together could contribute to the impression that the product was guacamole and contained avocado. *Id.* at *12. Here, by contrast, the Products contained the preemptive "naturally and artificially flavored," disclosure, and nothing indicated they were anything other than maple-*flavored*. *Id*. at *12.

consumer. Indeed, they cannot do so. A review of the sample label submitted by Quaker shows that "NATURALLY AND ARTIFICIALLY FLAVORED" is clearly visible at no less than four locations on a standard box. Quaker Label, ECF No. 54-3. As in *Stiles*, the "Products' packaging clearly represent that the Products contain 'natural flavors' without mention of maple syrup or maple sugar." 2017 WL 3084267, at *4. "[N]o reasonable reader seeking to purchase items containing maple syrup or maple sugar could ignore those representations." *Id.*

As part of Plaintiffs' struggle to find a theory of deception, they alternatively assert that a reasonable consumer could read the labeling and still be deceived, because "NATURALLY & ARTIFICIALLY FLAVORED" "does not immediately precede or follow the word maple." Opp. 15. Not only do FDA regulations permit Quaker's placement of this statement, *see* 21 C.F.R. § 101.22(i), but Plaintiffs also fail entirely to explain exactly what flavors a reasonable consumer would think "NATURALLY AND ARTIFICIALLY FLAVORED" references, if not maple and brown sugar.

### C. Plaintiffs Fail To Distinguish *Stiles*.

Finally, Plaintiffs have no credible answer to the case that dismissed near-identical claims, also brought by Plaintiffs' counsel, against Trader Joe's maple and brown sugar flavored oatmeal products. *Stiles*, 2017 WL 3084267, at *4. The best they can muster is to argue that *Stiles* is "factually distinguishable" because the Products here have a vignette with a pitcher of syrup in the background. But *Stiles* also included a vignette, which the plaintiffs asserted depicted maple. *Id.* at *4. Moreover, despite Plaintiffs' suggestion that maple leaves are the only appropriate vignette (Opp. 6), there is no such limitation in the flavor labeling regulations or guidance. *See* Order, ECF No. 50, at 9-10 (citing 21 C.F.R. § 101.22(i)).

The syrup vignette on Quaker's label, sitting next to fresh berries atop the photographed oatmeal (which Plaintiffs appear to concede are not present in the Products), on the *same panel* that states "serving suggestion," and "naturally & artificially flavored," could not deceive a reasonable consumer. *See* Opp. 14, n.11; *see*

*also*, *e.g.*, *Dvora*, 2011 WL 1897349, at *7-8; *McKinniss v. Gen. Mills, Inc.*, No. 07-cv-2521, 2007 WL 4762172, at *3-4 (C.D. Cal. Sept. 18, 2007) (no reasonable consumer would be deceived regarding the fruit content based on product or flavor names and images of fruit where the labels read "Naturally and Artificially Flavored," and truthfully disclosed the product ingredients).[5]

No reasonable consumer would understand Quaker's "Maple & Brown Sugar NATURALLY & ARTIFICIALLY FLAVORED" labeling to promise him or her a product containing maple syrup, especially as a *sweetener* rather than a flavor. Plaintiffs' deception-based claims must be dismissed.

## CONCLUSION

Plaintiffs have twice attempted and failed to demonstrate that their claims are not preempted. They provide no explanation whatsoever for how they could avoid preemption with a third try. *See* Opp. 19. A third bite at the apple would be "an exercise in futility." *Hairston v. S. Beach Beverage Co.*, No. 12-cv-1429, 2012 WL 1893818, at *3 (C.D. Cal. May 18, 2012). Quaker respectfully requests that this Court dismiss the First Amended Consolidated Complaint in its entirety, with prejudice.

---

[5] Contrary to Plaintiffs' assertion, *Williams* did not overrule all food labeling cases preceding it *sub silentio*. Opp. 18. *Williams* did not address the Gerber products' "naturally flavored" labeling at all. 552 F.3d at 939. Moreover, the *McKinniss* cases did not rely solely on the accuracy of an ingredients list to rectify alleged consumer deception; rather, they emphasized a combination of factors—"naturally and artificially flavored" labeling which indicated that references to fruit were characterizing flavors, and common sense. *See*, *e.g.*, *McKinniss v. Gen. Mills, Inc.*, 2007 WL 4762172, at *4 ("[A] reasonable consumer would be put on notice of the product's contents simply by sufficiently reading the packaging."). Several courts have cited *McKinnis* after *Williams*. *See*, *e.g.*, *Viggiano*, 944 F. Supp. 2d at 892; *Shaker v. Nature's Path Foods, Inc.*, No. 13-cv-1138, 2013 WL 6729802, at *5 (C.D. Cal. Dec. 16, 2013).

| | | |
|---|---|---|
| 1 | Dated: March 5, 2018 | GIBSON, DUNN & CRUTCHER LLP |

By: /s/ Andrew S. Tulumello
Andrew S. Tulumello

Andrew S. Tulumello, SBN 196484
  ATulumello@gibsondunn.com
Jason R. Meltzer, (*admitted pro hac vice*)
  JMeltzer@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue N.W.
Washington, D.C. 20036
Telephone:  202.955.8500
Facsimile:   202.467.0539

*Attorneys for Defendant Quaker Oats Company*

# **CERTIFICATE OF SERVICE**

I hereby certify that on March 5, 2018, I served a copy of the foregoing document via the Court's CM/ECF system to counsel of record in this action.

By: /s/ Andrew S. Tulumello
Andrew S. Tulumello